*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON DAVID SADOWSKI,

        Defendant-Appellant.

UNPUBLISHED
August 12, 2026
9:19 AM

No. 364447
Alger Circuit Court
LC No. 2019-002369-FC

Before: GADOLA, C.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals his conviction of second-degree murder and the corresponding sentence, arguing errors relating to the evidence, his defense counsel, the verdict, and the trial court's offense variables (OVs) scoring. Because we find no reversible errors with defendant's trial or verdict, we affirm defendant's conviction. We do find, however, that the trial court erred when it calculated defendant's sentencing guidelines, and therefore, we vacate defendant's sentence and remand for resentencing.

## I. BACKGROUND

This case was previously before this Court on interlocutory appeal, and this Court described the underlying factual history as follows:

> The victim, defendant's roommate, was found dead. The victim had severe facial injuries and had died of asphyxia as a result of bleeding. Text messages between the victim and defendant indicate that the victim had apparently decided to evict defendant from the victim's house. When law enforcement met with defendant on the night the victim was discovered, defendant's right hand was swollen and injured. [*People v Sadowski*, unpublished opinion of the Court of Appeals, issued July 23, 2020 (Docket No. 351607), p 1.]

After police found defendant at a hotel, defendant told police that he had "no story to tell" and that he last saw the victim in the morning, hours before the murder occurred.

-1-

The prosecutor filed two motions in limine to admit videos of jailhouse assaults by defendant, arguing that the videos were admissible to show defendant's method of causing harm to people and his reactions to insults. The trial court admitted one of the videos, and defendant filed an interlocutory appeal. The video depicted defendant "assaulting another prisoner in jail who had antagonized defendant," defendant "punching and choking the [other prisoner], who fell unconscious," and the other prisoner "regain[ing] consciousness quickly and [telling] guards that he was okay." *Id.* at 1-2.

This Court held that the video violated MRE 404(b)(1) and MRE 403, specifically because there was "not a striking similarity between the act portrayed in the video and the alleged murder." *Id.* at 4. "The prosecution's argument that the video is useful to demonstrate defendant's method of attacking someone and the defendant's reaction to provocation, to the extent that it is probative, is still substantially outweighed by the significant risk that the jury will conclude that because defendant has physically assaulted people in the past, defendant did it again with fatal results in this case." *Id.* at 5. This Court rejected the prosecutor's then-theory of admissibility, reversed the trial court, and remanded to the trial court for further proceedings.

Following the remand, defense counsel moved to withdraw as counsel. During the hearing, defense counsel asserted that he and defendant disagreed about the speed with which tasks were being completed. The trial court denied the motion, finding that, given the early stage of the proceeding, defense counsel had time to complete the tasks that defendant wanted to be done and that defendant had not been prejudiced.

Two years later, defendant filed a pro per motion to replace defense counsel for similar reasons as raised in his first motion. Defendant stated that if the trial court did not remove defense counsel, he was prepared to represent himself "under duress," even though he did "not prefer that course of action." The trial court denied the motion to discharge defense counsel, because the disagreement was about trial strategy, defense counsel was not ineffective, and defendant delayed bringing the motion until a month before trial. Defendant's motion to represent himself was also denied because it was not unequivocal and not timely, given that the motion came nine months after a trial date had been set and the trial had already been adjourned twice.

At trial, defendant claimed that he had killed the victim in self-defense. Furthermore, he claimed that a female neighbor urged the victim to attack defendant. The prosecutor moved to preclude admission of certain text messages between the neighbor and the victim about their relationship. The trial court held that defendant could ask the neighbor about conversations pertaining to defendant but that most of the text messages were not relevant and were substantially outweighed by the factors set forth in MRE 403. When the neighbor testified, defendant tried to introduce evidence of a plea deal involving the neighbor; the trial court excluded that evidence.

Evidence that was introduced at trial showed that the victim was in poor health and often needed the assistance of a crutch or cane to walk or stand. The prosecutor presented medical testimony about the victim from an expert in forensic pathology, including that the victim had multiple nasal fractures and contusions, as well as a broken bone in his neck. The expert also testified about the drugs found in the victim's body and how those drugs may have possibly affected the victim. After the prosecutor presented the case-in-chief, defendant moved for a directed verdict, and the trial court reserved its ruling on the first-degree murder charge.

Defendant testified at length and in great detail about his background in martial arts. He asserted that he never started a fight and that the victim had been the aggressor. After defendant testified, the prosecutor moved to admit the jailhouse video as rebuttal evidence under MRE 404(a). The prosecutor argued that defendant testified that he was not a violent person and denied acts of aggression, and so, the video was probative because it directly rebutted this testimony. The prosecutor did not argue that the video would not prejudice defendant but rather that defendant had "made it relevant by opening this door."

In response, defendant argued that the jailhouse video should remain inadmissible because it was dissimilar to this case. The trial court pointed out to defendant that this Court's previous decision on interlocutory appeal was made under MRE 404(b) and that the video was now being offered under MRE 404(a). Defendant continued to contend that the video would be substantially more prejudicial than probative. The trial court allowed the video, finding that because of "defendant's own testimony and his own statements about never starting a fight, this evidence ha[d] become relevant" for MRE 404(a) purposes due to the self-defense claim, allegations that the victim was the aggressor, and as rebuttal to defendant's testimony. Consistent with this, the prosecutor also called an acquaintance of defendant as a rebuttal witness, who testified that defendant could be physically provoked by words and would become angry when insulted.

After both parties rested, the jury began deliberating on a Friday afternoon. When the jury returned on Monday, the trial court judge appeared by Zoom to inform them that he, some of the attorneys and trial court staff, and two jurors tested positive for COVID-19. Alternate jurors were placed, and the courtroom was used for deliberations for the purpose of social distancing; no parties objected. Later that afternoon, the jury returned their verdict, rejecting defendant's claim of self-defense and convicting defendant of first-degree premeditated murder. MCL 750.316. The trial court concluded that the evidence did not support a conviction of first-degree premeditated murder, granted defendant's motion for a directed verdict, and reduced the offense to second-degree murder. MCL 750.317.

At sentencing, defendant objected to the scoring of OVs 6, 12, and 13. The trial court scored OV 6 at 50 points and OVs 12 and 13 at 25 points each, and sentenced defendant to 50 to 75 years' imprisonment.

Defendant now appeals.

II. ANALYSIS

A. JAILHOUSE VIDEO

Defendant first argues on appeal that the trial court erred by allowing the admission of the jailhouse video, arguing that the video was inadmissible under MRE 405. Specifically, defendant claims that the prosecutor did not follow the proper procedure for admitting the video because no cross-examination of a character witness occurred. Defendant also asserts that the video was inadmissible because aggression was not an essential part of his defense and the video was more prejudicial than probative.

At trial, defense counsel objected to the admission of the video on the basis of MRE 403, not MRE 405. Because defendant did not object to the video's admission on MRE 405 grounds, the issue is unpreserved and reviewed for plain error affecting substantial rights. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To obtain appellate relief under plain-error review, a clear or obvious error that affected the outcome must have occurred, and such error must have resulted in the conviction of an actually innocent defendant or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Carines*, 460 Mich at 763-764 (cleaned up).

It appears that the trial court likely erred in admitting the video. The grounds on which the prosecutor sought to admit the video were to rebut defendant's testimony on direct that (1) he did not start fights, and (2) the victim was the aggressor. These well may have been legitimate grounds for admission under MRE 404(a), even given this Court's prior decision under MRE 403 and MRE 404(b) on interlocutory appeal. *Sadowski*, unpub op at 5. But critically, MRE 405 limits the ways in which such character traits can be shown. MRE 405(a) allows reputation or opinion *testimony* by a character witness, and cross examination of that witness with, among other things, specific instances of the defendant's conduct. The video was not used as part of a character witness's testimony, so MRE 405(a) does not apply.

For its part, MRE 405(b) permits the use of specific instances of a defendant's conduct to show a character trait—which the video certainly was—but only when a defendant's character or character trait was "an essential element of a charge, claim, or defense." Neither open murder nor self-defense to that charge requires the showing of a defendant's character or character trait.

We need not decide whether the likely error was, in fact, a clear or obvious one. Even assuming for the sake of argument that the trial court committed clear or obvious error by admitting the video, such error did not affect the outcome of defendant's trial or result in the conviction of an actually innocent person or otherwise have a serious effect on the fairness or integrity of the proceedings under *Carines*. A witness who knew defendant testified that defendant could be physically provoked by words. The evidence presented at trial showed that defendant lied about the killing and may have attempted to hide at a hotel after the act. Further, defendant himself testified at length and in detail about his skills and experience as a martial-arts fighter. Most importantly, the physical evidence spoke for itself: defendant walked away from the encounter with little-to-no injuries whereas the victim suffered multiple fractures and contusions, in addition to death.

Therefore, even without the video evidence, the remaining evidence tended to disprove that deadly force was necessary for defendant to protect himself, an element for his self-defense claim. See, e.g., *People v Stevens*, 306 Mich App 620, 631; 858 NW2d 98 (2014) ("[A] jury could well disbelieve . . . that stabbing [the victim] four times was necessary to prevent defendant's imminent death."). Furthermore, the remaining evidence was not "overshadowed" by the video. Cf. *People v Soriano*, ___ Mich ___; ___ NW3d ___ (2026) (Docket No. 167373), slip op at 22 (applying the less-stringent evidentiary showing of "harmless error"). Given all the circumstances surrounding the victim's death and defendant's trial, reversal is not warranted based on the video's admission. *Carines*, 460 Mich at 763.

## B. APPOINTED COUNSEL AND SELF-REPRESENTATION

Next on appeal, defendant claims that the trial court should have appointed him a new defense attorney based on his motions. For substitution of counsel decisions, we review for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). An abuse of discretion occurs if the trial court does not select a reasonable and principled outcome or it makes an error of law. *People v Butka*, 514 Mich 366, 376; 22 NW3d 429 (2024).

To justify substitution of counsel, the substitution must not unreasonably disrupt the judicial process, and a defendant must show good cause, such as a legitimate difference of opinion regarding a fundamental trial tactic, a lack of diligence or interest by counsel, or a "destruction of communication and a breakdown in the attorney-client relationship." *People v McFall*, 309 Mich App 377, 382-383; 873 NW2d 112 (2015). General unhappiness and a lack of confidence unsupported by a substantial reason are insufficient to warrant substitution. *Id.*

The trial court did not abuse its discretion when it denied defendant's first motion for substitution. The disagreement between defendant and defense counsel arose relatively early in the case and was based on the perceived delay on counsel's part in accomplishing certain tasks. Counsel assured the trial court, however, that he had time to address the issues that defendant raised, and so, at that time, there was no cause for substitution.

Two years after his first motion to replace defense counsel, defendant again moved to substitute counsel a month before trial was scheduled. Significant time had passed between his first and second motions, and defendant failed to explain with specificity what allegedly critical tasks defense counsel had failed to perform in anticipation of trial. Instead, defense counsel stated that he had the relevant materials needed for the defense and was assisted by co-counsel Antionio Ruiz in the case.[1] Given defendant's lack of specificity and defense counsel's assurances, the trial court did not abuse its discretion in denying defendant's second motion for substitution.

Defendant also contends that the trial court should have allowed him to represent himself. In regard to a waiver of the Sixth Amendment right to counsel, we review for clear error the trial court's factual findings and review de novo issues of law. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Caddell*, 332 Mich App 27, 41; 955 NW2d 488 (2020).

To self-represent, defendant must make an unequivocal request to represent himself; that choice must be knowing, intelligent, and voluntary; and the self-representation must not disrupt, unduly inconvenience, or burden the court. *People v Spears*, 346 Mich App 494, 505; 13 NW3d 20 (2023). The trial court did not err by denying defendant's request given that defendant claimed

---

[1] Defendant contends that the prosecutor interfered with his right to counsel by stating that Ruiz was a res gestae witness when he was not, which resulted in Ruiz not being able to be counsel of record. Defendant waived this issue because Ruiz was listed as a witness for the *defense,* and Ruiz in fact testified as a witness for the defense. Defendant is improperly attempting to "harbor error as an appellate parachute." *People v Riley*, 465 Mich 442, 448-449; 636 NW2d 514 (2001).

-5-

that such self-representation would be "under duress" and that he "did not prefer that course of action." The waiver was not unequivocal, and so, the request was properly denied.

## C. EXCLUDED EVIDENCE

Next, defendant contends that the trial court improperly excluded certain evidence pertaining to the female neighbor. We review preserved evidentiary rulings for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). Under MRE 403, evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The trial court did not abuse its discretion in excluding text messages involving the neighbor and the victim that did not mention defendant. The text messages did not have sufficient probative value and were substantially outweighed by the dangers and considerations provided for in MRE 403. Defendant contends that the text messages supported his theory that the neighbor urged the victim to attack defendant and that the victim was upset about not being paid by tenants. The messages provided marginal, if any, support to defendant's contentions, and similar information was conveyed through other evidence, such as the text messages involving defendant. Any probative value was substantially outweighed by confusion to the jury that would have resulted from their admission.

In addition to text messages, defendant also argues that evidence involving a criminal action against the female neighbor should have been admitted at trial. He argues, in effect, that the female neighbor's "fate was still up in the air" when she testified against him, and evidence of a plea agreement in a separate, pending criminal action against her should have been introduced to undermine her credibility. It is undisputed, however, that the female neighbor had been discharged from her probation in that separate action by the time she testified in the present case, and therefore, the factual assertion on which defendant grounds his claim is without merit.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

In addition to the underlying claims of error in relation to his trial, defendant also argues that his defense counsel was ineffective, specifically for raising an improper objection to the video's admission, improperly advising defendant about the risks of the video's admission, failing to consult with a toxicology or narcotics expert, failing to object to the trial court's directed-verdict procedure, and failing to request a continuance due to a COVID-19 outbreak.

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as required by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *People v*

-6-

*Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The performance will be deemed to have prejudiced the defendant if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

In regard to the admission of the video and defendant's testimony that contributed to its admission, defendant has not shown that he was prejudiced by any deficient performance. As pointed out earlier when discussing plain error, apart from the video, there was evidence that defendant lied about the killing and hid in a hotel. More damaging, defendant himself admitted at length that he was a skilled martial-arts fighter, and there was evidence that the victim was in poor health and often needed the assistance of a crutch or cane. The physical injuries suffered by the victim during the assault, and the lack of any injuries to defendant who claimed self-defense, were fully consistent with the prosecutor's theory of murder. Simply put, there is no reasonable probability that the outcome of the trial would have differed had defense counsel advised defendant differently about testifying or objected to the video on the basis of MRE 405.

For defendant's claim that his counsel was ineffective for not consulting with a toxicology/narcotics expert, defendant has failed to show that such failure was deficient performance or that it was reasonably probable that such consultation would have changed the outcome. At trial, the medical examiner testified about the substances present in the victim's body and how those substances may have affected the victim. On appeal, defendant submits an affidavit from a psychologist but fails to show that the psychologist would have been qualified as an expert that could have introduced different evidence of the effects of chemical substances on the victim. Therefore, defendant has not supported his claim of ineffective assistance of counsel in this aspect.

Defendant also argues on appeal that the trial court erred by reserving the decision on defendant's directed-verdict motion until after the verdict was delivered, and that his defense counsel was ineffective for failing to object to the trial court's procedure. Because MCR 6.419(B) specifically allows a trial court to issue its decision on a motion for a directed verdict "either before the jury returns a verdict or after it returns a verdict of guilty," defendant's argument is without merit, as counsel need not make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010)

Similarly, defense counsel did not act below an objective standard of reasonableness when he did not object to the trial court's procedures when the trial judge, some attorneys and court staff, and two jurors tested positive for COVID-19. In the context of COVID-19, a trial court is allowed to implement necessary protocols to protect the jurors as well as others involved in the proceedings. *People v Serges*, 351 Mich App 88, 147; 34 NW3d 550 (2024). As long as the precautions were reasonable and the jury took their duty seriously, the verdict was not coercive. See *id.* at 149-150. Like in *Serges*, the trial court in defendant's case took reasonable precautions, and there is no evidence that the jury's impartiality, reason, or judgment was affected by these precautions. Therefore, defendant's claim of ineffective assistance of counsel on this theory likewise fails.

## E. CUMULATIVE ERROR

Finally, with respect to defendant's conviction, defendant argues that the cumulative errors that occurred deprived him of his due process right to a fair trial. Although the cumulative effect of several errors can constitute sufficient prejudice for reversal, only actual errors are considered,

not issues that can be considered close calls. *People v LeBlanc*, 465 Mich 575, 591-592; 640 NW2d 246 (2002). The only likely error was the admission of the jailhouse video, but after our review of the video and the other evidence at trial, any error related to its admission was not so prejudicial to warrant reversal. Thus, we affirm defendant's conviction.

## F. SENTENCING

In addition to challenging his conviction on appeal, defendant also argues that the trial court erred in sentencing, specifically in scoring OV 6 and OV 13. We "review sentencing guidelines scoring decisions to determine whether the sentencing court properly exercised its discretion and whether the evidence adequately supported a particular score." *People v Wiggins*, 289 Mich App 126, 128; 795 NW2d 232 (2010). We review de novo questions of law such as "statutory interpretation concerning the application of the sentencing guidelines." *Id.*

Taking up OV 13 first, that guideline provision pertains to a continuing pattern of criminal behavior and is scored at 25 points if the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Similarly, OV 12 relates to contemporaneous felonious criminal acts and is scored at 25 points if three or more contemporaneous felonious criminal acts involving crimes against a person were committed. MCL 777.42(1)(a). If conduct is scored in OV 12 and is not related to organized crime or gangs, then it should not be scored under OV 13. MCL 777.43(2)(c).

Here, the trial court scored OV 12 at 25 points based on several pieces of child-sexually-abusive material found on defendant's phone.[2] OV 13 was then scored at 25 points for this same content. It was error for the trial court to score both OV 12 and OV 13 at 25 points based on the same conduct, in contradiction of MCL 777.43(2)(c). See *People v Sweet*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2019 (Docket No. 341338), p 8 n 11 (explaining that even if there are, for example, five acts that qualify under OV 12, the two "extra" acts cannot be used to score OV 13 because of the "or more" language in MCL 777.42(1)(a)).[3]

For OV 6—the intent to kill or injure—the prosecutor concedes that a 50-point score was in error, but the parties disagree on whether it should have been scored at 25 points or 10 points. OV 6 should be scored at 25 points if defendant "had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). OV 6 should be scored at 10 points if defendant "had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life." MCL

---

[2] At sentencing, the prosecutor stated that "charges exist in the record, they were bound over." Accordingly, it is unclear whether the acts resulted in separate convictions. But defendant does not argue about this aspect of OV 12 on appeal.

[3] Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

777.36(1)(c). OV 6 can also be scored at 10 points if the "killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b).

Here, the trial court made no findings on whether the death occurred in a combative situation. Furthermore, a trial court should score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). This is the type of factual finding that should be made by the trial court in the first instance, not this Court on appeal. Regardless, a score of either 10 or 25 points for OV 6, in combination with a score of 0 points for OV 13, changes the guidelines range and therefore warrants resentencing. *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

### III. CONCLUSION

Because we find no errors warranting reversal with regard to the trial, we affirm defendant's conviction. There were, however, errors with defendant's sentence, as explained. Thus, we vacate defendant's sentence and remand for resentencing.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Brock A. Swartzle